**Opinion issued November 13, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00846-CR

———————————

**CHAZ WILSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 98366-CR**

---

## MEMORANDUM OPINION

Appellant Chaz Wilson was indicted on two counts of engaging in organized criminal activity, namely burglary of a building (units in a storage facility) and theft of property worth between $30,000 and $150,000 (a boat and trailer). After trial on the merits began, he changed his not guilty plea to guilty in exchange for

the State's agreement to abandon an enhancement. The jury assessed punishment of 10 years in prison and a fine of $5,000 for the count relating to burglary of a building and 18 years in prison and a fine of $5,000 for the count relating to theft. In his sole issue on appeal, Wilson argues that the punishment was grossly disproportionate to his crimes. He argues that, notwithstanding the facts that he pled guilty and failed to seek submission of lesser-included offenses, the jury should have assessed a much lower sentence because the evidence showed he was guilty only of burglary or theft. The State argues that Wilson failed to preserve his complaint that his punishment was grossly disproportionate to his crimes.

We agree that Wilson did not preserve his sole issue, and we affirm.

## Background

Wilson was charged by indictment with two counts of organized criminal activity consisting of burglary and theft of multiple storage units and a fishing boat at Extra Space Storage in Pearland, Brazoria County, Texas on February 12 and February 13, 2023.

Wilson initially pleaded not guilty, but he changed his plea after the testimony from the manager of Extra Space Storage and the owner of the boat. They testified about the basic contextual facts of the crimes, identified the boat from surveillance videos, and testified that Wilson had no right to enter the property, the individual storage units, or take the boat in February 2023. The boat

owner testified that he had considered selling the boat shortly before the theft, and his research showed that similarly outfitted boats were selling for between $44,000 and $47,000, which was the same or slightly more than he paid for the boat when he bought it in July 2018. He said that the price inflation was due to the shortage of component replacement parts caused by the Covid-19 pandemic's effect on supply chains.

After Wilson entered a guilty plea, the court moved into a punishment hearing before the jury, during which uncontroverted evidence in the form of testimony and surveillance video was admitted. It showed that Wilson, along with Corey Cuff and Brandon McGovern, used hand tools and a pry bar to gain forced entry through a locked gate and to locked storage units. Over the course of two days and nights, Wilson and the others removed personal property from multiple units and drove away with a fishing boat that had been stored on a grassy lot on the premises. In connection with the investigation of these crimes, Pearland Police Department detectives learned that Wilson, Cuff, and McGovern had been identified in connection with a recent, multi-county crime spree involving burglary and theft at other storage facilities. Namely, multiple storage facility burglaries had been reported in Pearland on January 1, 2023. And at least one storage facility burglary was reported in Pasadena prior to the February 2023 burglary and theft for which Wilson was charged in this case. Working with a detective from the

Pasadena Police Department, Pearland detectives learned that Wilson had used a driver's license in the name of Brandon Wall, which had been taken from a Pearland storage facility in January 2023, to attempt to sell musical equipment taken from the Pasadena storage facility, also in January 2023. Video surveillance showed Wilson, Cuff, McGovern, and another co-conspirator or vehicles registered in their names at the sites of the other storage facility burglaries, at the time of the burglaries, carrying out the burglaries. The Pearland detective testified that the calm demeanor as they efficiently gained forced entry to the storage units indicated that they had experience in doing so. The detective concluded that Wilson was the leader of the group because he cut the chains and broke the locks, and the other men drove Wilson to the location. In addition, the detective testified that the stolen fishing boat was sold at a warehouse near Ellington Field that was known to law enforcement as a fencing operation. He said that his investigation revealed that Wilson was present when the boat was sold. In addition, he testified about the value of the stolen property and cost to repair damages at the Extra Space storage facility, estimating the total was at least $60,000.

Wilson presented two character witnesses: his fiancée and his mother. His fiancée testified that he was an "amazing," hands-on, and present father to both their infant daughter and his 13-year-old son, whose mother had primary custody. She said it would help her if he could come home as soon as possible as she was

4

"in recovery," restarting her life with her infant daughter, and in need of Wilson's support, including his hands-on parenting that had been helpful after their daughter's birth. She denied having spoken to Wilson by phone since he had been confined in connection with the charged offenses. On cross-examination, she conceded that her infant daughter had been placed with relatives and would not be returning to her care, that she was aware of Wilson's history of burglary and theft, that she had spoken to Wilson by phone since he had been confined in connection with the charged offenses, that she had been convicted of four instances of failing to identify herself in 2016 and 2017, and of using at least five pieces of fraudulent identification in 2020. The State also introduced evidence of Wilson's prior convictions for burglary with intent to commit theft in 2015, theft of a firearm in 2018, and burglary of a building in 2021.

Wilson's mother testified about his caring, loving, generous, and charismatic nature. She also testified about Wilson's involvement with his son and attending his son's baseball games and track meets. She testified that in recent years he has helped with transportation, food, and finding a place to live. She said that she does not have a car and that life will be difficult without him. She said that Wilson sees his son every other weekend, and that without Wilson in his life, his son would become depressed and his academic and athletic performance will suffer. She asked the jury to have mercy on Wilson.

After both sides rested, the court held the charge conference, specifically asking if either side had "any additions, deletions or changes to it?" Wilson's counsel said: "No. We're good with it." Wilson had pleaded guilty to two counts of engaging in organized criminal activity for burglary of the storage facility (count 1) and theft of the fishing boat (count 2). The charge instructed the jury to find Wilson guilty of engaging in organized criminal activity as charged in count 1 and 2 of the indictment. The punishment question for count 1 instructed the jury to assess punishment of "not less than two (2) years nor more than ten (10) years," and a fine of "not more than Ten Thousand ($10,000) Dollars." The punishment question for count 2 instructed the jury to assess punishment of "not less than two (2) years nor more than twenty (20) years," and a fine of "not more than Ten Thousand ($10,000) Dollars." The jury assessed punishment of 10 years and $5,000 for count 1 and 18 years and $5,000 for count 2.[*] Before the court imposed the sentence, the judge asked if there was any legal reason why the sentence should not be assessed at that time, and the defendant responded, "No." The defendant did not file any post-trial motions.

---

[*] *See* TEX. PENAL CODE § 71.02(b) (punishment for organized crime conviction is one degree higher than underlying crime committed by defendant in combination with others); *id.* § 30.02(c)(1) (burglary is state jail felony if committed in building other than habitation); *id.* § 12.34(a) (third degree felony punishment range is not more than 10 years or less than 2 years); *id.* § 31.03(e)(5) (theft is felony of third degree if value of property stolen is $30,000 or more but less than $150,000); *id.* § 12.33(a) (second degree felony punishment range is not more than 20 years or less than 2 years).

**Analysis**

In a single issue, Wilson argues that his punishment was grossly disproportionate to the crime committed. He asserts that the evidence showed that, as to count 1, he was guilty only of burglary of a building not of organized crime. As to count 2, he likewise asserts that he was guilty only of theft, not of organized crime, and that there was no evidence that the boat was worth as much as the purchase price at the time of the theft, which was five years after the purchase. Thus, he maintains that because he was guilty only of a state jail felony as to both counts 1 and 2, his punishment should have been confinement for not less than 180 days or more than 2 years, instead of the 10 years' and 18 years' confinement for which he was sentenced for counts 1 and 2, respectively.

Wilson's challenge that the punishment was grossly disproportionate to the crime committed is an argument that the sentence violates the Eighth Amendment to the United States Constitution. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) ("An allegation of disproportionate punishment is a valid legal claim. The concept of proportionality is embodied in the Constitution's ban on cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense.") Traditionally, the Texas Court of Criminal Appeals has "held that punishment assessed within the statutory limits, including

punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *Id.* at 323.

An Eighth Amendment challenge asserting that the punishment assessed is grossly disproportionate to the crime must be preserved by raising it in the trial court at the punishment hearing or in a motion for new trial. *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing TEX. R. APP. P. 33.1(a); "[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired."); *see In re J.F.*, No. 01-22-00384-CV, 2023 WL 4003301, at *4–5 (Tex. App.—Houston [1st Dist.] June 15, 2023, no pet.) (mem. op., not designated for publication) (overruling Eighth Amendment "grossly disproportionate" argument because it was not preserved at punishment hearing or in motion for new trial). After the trial court announced Wilson's sentence at the punishment hearing, Wilson made no objection and affirmatively stated that there was no legal reason why the punishment should not be assessed. He also did not assert this complaint in a motion for new trial. Because Wilson did not raise this Eighth Amendment, grossly disproportionate sentencing argument in the trial court, we conclude that he has failed to preserve the issue for appellate review.

## Conclusion

We overrule Wilson's sole issue, and we affirm the judgment of the trial court.

Susanna Dokupil
Justice

Panel consists of Chief Justice Adams, and Justices Morgan and Dokupil.